**SHELTER MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Robert TUCKER, et al., Defendants–Appellees.**

**No. 87–6292.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 20, 1988.

Decided Oct. 11, 1988.

---

James E. Conley, Jr. (argued), Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard, Adams, Memphis, Tenn., for plaintiff-appellant.

Saul Kay, Larry E. Killebrew, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., for defendants-appellees.

David Lynn Cobb, Memphis, Tenn., for Phipps.

Orville Almon, Jr., Nashville, Tenn., for defendants-appellees S. Ziegler, S. Hunt and C. Hunt.

James W. Cook (argued), Memphis, Tenn., for defendants-appellees R. Tucker, C. Tucker, B. Tucker and M. White.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

PER CURIAM.

Shelter Mutual Insurance Company brought a diversity action against its named insured and others, seeking a declaratory judgment that a certain automobile that had been involved in an accident was "furnished or available for the regular use of either the named insured or [a] resident of the same household" and thus was excluded from coverage under the terms of the insured's automobile liability policy. After a bench trial, the district court found that the car was not "furnished or available for the regular use of" the insured or his household, and thus was covered by the policy. Because this finding is not clearly erroneous, we shall affirm the judgment of the district court.

I

The principal figures in this case are Charles and Betty Tucker, their teen-aged son Robert, and Mrs. Tucker's mother, Maude White. In 1981 the Tuckers owned four vehicles, all of which were insured by the company now known as Shelter Mutual Insurance Company. Mrs. White, who lived about a mile away from the Tuckers' house, did not own any car originally, and she depended mainly on the Tuckers for transportation.

In March of 1981 Mrs. White asked Mr. Tucker to buy her a car. Mrs. White does not drive, and she apparently expected members of the Tucker family to continue to drive her where she needed to go.

Mr. Tucker bought Mrs. White a used car that needed a new carburetor and extensive work on the transmission and brakes. It later developed additional problems. From March until the end of July, 1981, the car was mostly at the Tuckers, where Mr. Tucker made numerous attempts to repair it. His efforts were not notably successful. There was testimony that the car was operable for about 15 days "at most" during the first four or five months after it was purchased. Mr. Tucker testified that he had taken the car once to the grocery store and used it to drive Mrs. White around town a couple of times; otherwise it had not been driven except to test the attempted repairs. A neighbor corroborated much of Mr. Tucker's account. No one took out liability insurance with respect to the car.

Late in the summer young Robert Tucker used the car once to take his grandmother to church and once to take her to the grocery store. He also used the car himself, on at least one or two occasions, after getting permission from both his parents and Mrs. White. His parents insisted that he get Mrs. White's permission before taking the car out.

On Monday, September 14, 1981, Robert used the car (again with Mrs. White's permission) to get to and from school. On Tuesday, September 15, 1981, he did the same thing with his father's permission. On the next day, which was the day of the accident, Robert had intended to take the school bus but missed it. After getting his parents' permission, he took Mrs. White's car. While on his way to school, he collided with another vehicle.

A number of tort actions for personal injuries and property damage were filed after the accident, prompting Shelter Mutual to bring the present action for a declaration as to insurance coverage.

It is agreed on all sides that the Shelter Mutual policy covered Robert Tucker at the time of the accident if Mrs. White's car came within the policy's definition of a "non-owned" vehicle. That definition excluded "an automobile owned in whole or in part by, or furnished or available for the regular use of either the named insured or any resident of the insured's household." Robert Tucker was a resident of the insured's household, so the question to be adjudicated was whether the car was furnished or available for his regular use.

After a one-day bench trial, the district court said that the car was not so furnished or available. Judgment was accordingly entered for the defendants. The district court's opinion has been published at 668 F.Supp. 1073 (W.D.Tenn.1987). Shelter Mutual has appealed, contending that the district court erred in finding that the car was not available for Robert's regular use.

## II

Both parties rely on what they say is the sole Tennessee case in point, *United Services Automobile Association v. Couch,* 643 S.W.2d 668 (Tenn.Ct.App.1982). That case involves an insurance policy exclusion substantially identical to the one in the case at bar.

The *Couch* court did not treat "furnished or available for the regular use of [the insured's family]" as a term of art. The court simply quoted definitions of the word "regular" from Webster's Dictionary and Black's Law Dictionary, reviewed the evidence at some length, and concluded that the vehicle in that case was furnished for regular use. The district court took a similar approach in this case, but reached the opposite conclusion on the facts. We may reverse the district court's judgment only if the pertinent findings of fact are clearly erroneous. Fed.R.Civ.P. 52(a).

Shelter Mutual does not seriously argue that the car was "furnished" for the Tuck-

ers' use, or that the Tuckers did in fact regularly use the car. It argues, rather, that even if the car was not in fact regularly used by the Tuckers, it was *available* for their regular use, because the sole ignition key was kept at the Tuckers' house and the car was parked in the Tuckers' garage or on the street outside their house most of the time.

The district court found that the car was at the Tuckers' house for repairs and was operable for only about 15 days during the entire spring and summer of 1981. The car still had a serious transmission problem at the time of the accident. The family normally got Mrs. White's permission before using the car for their own purposes. According to uncontroverted testimony, Robert Tucker took the car out on the day of the accident only because he had missed the bus.

All of these facts support the district court's finding of coverage. That finding is entitled to special deference in a case such as this, where so much depends on the trier of fact's evaluation of the credibility of witnesses. The district court might well have found that Mrs. White's car was available for the regular use of one or more members of the Tucker household, and such a finding would have meant that there was no coverage regardless of the regularity of actual use of the car by the Tuckers. Failure to make regular use of a car is not dispositive of the question of availability for use. But the district court found that the car was not "available" for the Tuckers' regular use, and we are not prepared to say that this finding was clearly erroneous.

Shelter Mutual also argues that the district court erred in denying a post-trial motion for amendment of the findings of fact. We view this argument as no more than a reformulation of the attack on the findings. We do not think the district court abused its discretion in denying the motion. See *Kraly v. National Distillers and Chemical Corp.,* 502 F.2d 1366, 1370 n. 6 (7th Cir.1974).

The judgment of the district court is AFFIRMED.