633 A.2d 215

**EVERETT CASH MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Edwin KRAWITZ, Trustee for Elsie Keiper.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1993.

Filed Nov. 15, 1993.

26

Glenn A. Ricketti, Philadelphia, for appellant.

Edwin Krawitz, Stroudsburg, for appellee.

Before ROWLEY, President Judge and OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order by the Honorable Linda Wallach Miller denying appellant's petition to vacate an appraisal award on an insurance claim. Appellant, the Everett Cash Mutual Insurance Company (Insurer), insured a house owned by appellee Edwin Krawitz (Owner), which burned down on April 8, 1992. Appellant has never denied liability under its fire insurance policy; it is the procedure for determining the amount of compensation which is at issue. We

agree with Judge Miller that the insurance appraisal award was arrived at properly, and should not be vacated. We therefore affirm.

Judge Miller incisively set forth the history of this case in the opinion accompanying her order of March 31, 1993. R.R. p. 40. Our review of the record confirms her findings, which we will summarize briefly. Owner and Insurer each retained an adjuster to determine the amount of the loss. When the adjusters (Young Adjustment Company for Owner, Jack Dietrich Associates for Insurer) disputed the amount of the fire loss, they turned to the insurance policy's appraisal clause to settle their differences. R.R. p. 12, ¶ 13. This clause requires each party to select an appraiser; the appraisers then select an umpire. If the appraisers cannot agree on the amount of the loss, they submit the differences in their respective estimates to the umpire. Any two of these three parties can then sign an agreement which fixes the value of the loss.

Young, Owner's adjuster, appointed Charles Kessler, a builder, as its appraiser; Dietrich, Insurer's adjuster, appointed Edward Gieda, a general contractor. Kessler and Gieda agreed to select Alfred MacMoran, of the F.P. Davis and Sons construction management company as umpire. Gieda never signed the official document naming MacMoran as the umpire, ostensibly because of a fee dispute.[1]

At this point, the record shows that Kessler visited the site and worked diligently with the umpire to settle the amount of the loss. Gieda, on the other hand, remained "hung up" on the fee dispute; he missed appointments with Kessler and MacMoran, failed to communicate with them, and never sub-

---

1. The record contains correspondence between Gieda and MacMoran regarding MacMoran's umpire fee. The insurance policy's appraisal clause requires the parties to split the umpire fee. Gieda wrote to MacMoran on August 26, 1992, asking (1) if he was to pay $400, or was that the amount to be split; and (2) presuming the $400 was an advance fee, what MacMoran's hourly rates were. R.R. p. 14. MacMoran responded two days later that Gieda was to pay $400 (Kessler, the Owner's appraiser, had already agreed to pay his share), but that would be the entire umpire fee; MacMoran would bill at this flat rate rather than by the hour. R.R. p. 16. This exchange should have ended any fee dispute.

mitted any loss estimates to them. R.R. p. 45. After more than a month of inaction on Gieda's part, Kessler decided the time had come to settle the claim. Kessler adopted the estimate of a contractor engaged by Young (Owner's adjuster), met with MacMoran,[2] and on October 6, 1992, the two negotiated an amount for the fire loss. Insurer filed a petition to vacate this award and have the court appoint another umpire, which was denied. This appeal followed.

Insurer presents three questions on appeal, all stemming from its contention that Owner proceeded to settle the claim in violation of the appraisal clause. Because Insurer bases its arguments on its own strict interpretation of the insurance contract, we are mindful that when ambiguous, insurance contracts are to be construed strictly against insurers and in favor of insureds. *See Bateman v. Motorists Mutual Insurance Co.*, 527 Pa. 241, 590 A.2d 281 (1991). Furthermore, courts must focus on the reasonable expectation of the insured in an insurance transaction. *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). *Collister* specifically advises:

Courts should be concerned with insuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent.... Courts must examine the dynamics of the insurance transaction to

2. Kessler asked Gieda to attend the meeting with MacMoran, but Gieda never returned his call. R.R. pp. 209, 268.

ascertain what are the reasonable expectations of the consumer.

*Collister, supra,* at 594–595, 388 A.2d at 1353–1354 (emphasis added). *See also Dibble v. Security of America Life Insurance,* 404 Pa.Super. 205, 590 A.2d 352 (1991). Thus we must consider the entire transaction, and not just a technical, precise and narrow interpretation of one clause of the insurance contract. With this policy in mind, we address Insurer's claims.

▮▮▮ Insurer argues first that the umpire only had jurisdiction to settle "differences" between the appraisers' valuations; since the appraisers never discussed the claim directly with each other, and neither submitted its own evaluation to the umpire, the umpire had nothing to settle. Insurer admits that its appraiser never submitted anything to anyone, and argues that it was a violation of the contract for Kessler, Owner's appraiser, to adopt a contractor's itemization of the loss as his own. Insurer then characterizes the submission of differences in these evaluations as a condition precedent to the exercise of the umpire's jurisdiction.

Viewing the transaction as a whole, we find this argument meritless. Nothing in the contract supports Insurer's claim that an appraiser may not adopt a contractor's estimate as his own. Kessler had done all he could to meet with Gieda to evaluate the loss; only after Gieda proved uncooperative did Kessler bring his own evaluation of the loss to the umpire. The record shows that Gieda, Insurer's appraiser, did nothing to advance the settlement of this claim, presumably because of a fee dispute with the umpire MacMoran.[3] Insurer essentially asks us to recognize a condition precedent to payment in its insurance policy which only it can fulfill. This would convert Insurer's duty to pay into an option to pay, or give it the power to delay payment indefinitely, as in the present case. Such an interpretation would utterly destroy any reasonable

---

3. We note further that MacMoran was only asking Gieda for a $400 flat fee, which Kessler had already agreed to pay. Meanwhile, the insured had lost a house valued at over $100,000, and months had passed without any reimbursement from the Insurer.

expectations of the insured, and cannot be accepted by this Court.

Insurer argues that if Owner felt that Insurer was not properly performing its duties under the appraisal clause, then Owner should have brought an action in equity to compel Insurer to specifically perform. *Ice City, Inc. v. Insurance Company of North America*, 456 Pa. 210, 314 A.2d 236 (1984). While a narrow reading of the *Ice City* case does support equity as an available remedy, we agree with the court below that the case stands for the broad proposition that appraisal clauses should be honored without resort to litigation. "This Court cannot agree that the insurer may unilaterally free itself from its statutorily-imposed and contractually-required appraisal obligations." *Id.* at 220, 314 A.2d at 242.

█ Here Insurer, through its appraiser Gieda, stymied the entire valuation process. Kessler's actions in response to this stonewalling were perfectly reasonable. Kessler presumed that since Gieda offered no evaluation, his evaluation of the loss was $0, and the "differences" between the appraisals would therefore be the entire amount of the loss. Kessler then took these differences to MacMoran, the umpire, and pursuant to the appraisal clause the two negotiated a settlement. Insurer brought this settlement upon itself through its own derelict behavior. Furthermore, Insurer nowhere claims that the amount of the settlement is unreasonable or even a little too high; rather, Insurer asks us to vacate the award solely because it does not like the "one-sided" manner of resolution. Viewing the transaction as a whole, we deem any dissatisfaction to be a result of Insurer's own wrongdoing. Hence, we agree with Judge Miller that equity will not now permit us to vacate this award.

Our resolution of this first argument disposes the other two. Indeed, the remaining two arguments raise no new issues. Insurer argues that because, according to its interpretation, the appraisal clause was not strictly followed, a new umpire should be appointed and a new appraisal conducted. We have addressed the issue of performance of the appraisal clause,

and have concluded that Insurer's position is unreasonable and inequitable. We have upheld the appraisal award, and hence there is no need to appoint a new umpire or conduct a new appraisal.

The order denying the appellant Insurer's petition to vacate the appraisal award is affirmed.