657 A.2d 1311

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellee

v.

Joseph BRNARDIC, Brnardic Construction Inc., John
D. Yelincic; Patricia Bushik, Ryan Bushik;
Fleming Keefer and Robert J. Desman.

**Appeal of John D. YELINCIC.**

Superior Court of Pennsylvania.

Argued April 28, 1995.

Filed May 9, 1995.

Alexander J. Jamiolkowski, Pittsburgh, for appellant.

Thomas W. Smith, Greensburg, for State Farm, appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, BECK, KELLY, POPOVICH, JOHNSON and SAYLOR, JJ.

OLSZEWSKI, Judge.

In December of 1988, Joseph Brnardic was driving a Chevy S-10 pick-up truck owned by his employer, Brnardic Construction Company, when he hit and injured John Yelincic. Yelincic sued Joseph Brnardic and Brnardic Construction Company. The Company insured its Chevy pick-up with State Farm Mutual Automobile Insurance Company, which tendered the $100,000 limit of the pick-up truck's liability policy.

Yelincic contended that in addition to the Chevy pick-up truck's liability policy, he should also receive coverage from the policy on Joseph Brnardic's and his wife's personal cars, even though these two cars were not involved in the accident. Like the company pick-up truck, the Brnardics' personal cars were insured by State Farm. State Farm denied coverage under the personal cars' policy, and filed this declaratory judgment action to determine its obligations under that policy.

The State Farm policy covering the Brnardics' personal cars also covered the Brnardics for liability incurred while driving a newly acquired car, a temporary substitute car, or a non-owned car. Hence, Yelincic argued that even though Mr. Brnardic did not own the company truck, his personal car coverage should still pay on the claim. The non-owned car coverage, however, expressly excluded any car which Mr. Brnardic had operated "during any part of more than 45 days in the 365 days preceding the date of the accident." R. 42a. Mr. Brnardic admitted that he drove the company pick-up truck regularly, for about 270 or 280 of the previous 365 days before the accident. R. 78a. Because this uncontested fact put Brnardic into a clear policy exclusion, the trial court found for State Farm, holding that it had no obligation to pay under the Brnardics' personal car insurance policies. Yelincic appealed.

On appeal, Yelincic concedes that Mr. Brnardic's regular use of his company's pick-up truck does fall within his policy's exclusion for regular use of a non-owned car. Yelincic's entire argument is that this exclusion should be considered void as against public policy. Yelincic claims that the exclusion is contrary to the Motor Vehicle Financial Responsibility Law (MVFRL) because it "serve[s] to deny a policy holder financial responsibility." Appellant's brief at 12; *see* 75 Pa.C.S.A. § 1702 (defining financial responsibility as "the ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of the injury to one person and any one accident").

The trial court flatly rejected this claim, since the truck's owner did comply with the MVFRL in maintaining financial responsibility for its truck, and Yelincic received that policy's coverage limit. Trial court opinion, 7/20/94 at 2. We note that the Brnardic Construction Company carried a good deal more coverage than the minimum required under the MVFRL. Because Brnardic Construction is so financially responsible, Yelincic enjoyed $100,000 of coverage instead of the legal minimum of $15,000. If that amount did not cover Yelincic's damages, he could have brought an action against Mr. Brnardic and possibly against his employer as well, which the record shows have assets to satisfy any judgment Yelincic might obtain.

Instead, Yelincic sought coverage under the insurance policy for the Brnardics' personal cars, even though these cars had nothing to do with the accident. Because the plain, unambiguous language of this policy excludes coverage for non-owned cars which the policy holder regularly drives, Yelincic contends that this exclusion must be declared void. He argues that the exclusion is against the public interest because it does not provide the greatest possible coverage to injured claimants. While we would use this canon of construction in an unclear or doubtful case, we agree with the trial court that the policy exclusion before us fully comports with Pennsylvania law, and makes good sense as well. We therefore affirm.

The crux of Yelincic's argument is that when a person buys car insurance, that insurance should pay whenever the person is liable in an accident, regardless of what car the person was driving. Under Yelincic's approach, car insurance would follow the insured, not the car. Under Pennsylvania law, however, liability insurance follows the car. *See* 75 Pa.C.S.A. § 1786 (requiring liability insurance coverage for motor vehicles, not for every person who might drive one).

The reason for this is that the cost of liability insurance depends not just on a driver's record, but also on the type of car itself. Consider two very different types of cars: a big sport-utility vehicle with a powerful V–8 engine and four-wheel drive, versus a two-door economy subcompact. The former weighs more, has more torque and can go much faster than the latter. It follows under the laws of physics that the former is capable of causing a great deal more damage than the latter. Hence, the same driver should expect to pay more for liability insurance on the former car than on the latter, because it can cause worse accidents.

Because liability costs depend on the type of car, insurance companies are entitled to know what kind of cars their insureds drive. An insurance company will not write a liability policy for an unknown car, and the cost of liability insurance depends heavily on the type of car, not just the insured's driving record. People do occasionally find themselves driving unfamiliar cars, though: rental cars, loaners while their regular cars are in the shop, new cars, and borrowed cars. People naturally want and expect their liability insurance to cover them for accidents in such cars.

Thus, there is a tension between an insurance company's need to know what kind of cars their insureds drive, and the consumer's desire to have liability coverage extend to the occasional car not mentioned in the policy. The Brnardics' policy with State Farm balanced this tension by extending coverage to temporary substitute cars, newly acquired cars, and non-owned cars, subject to a few exclusions. One exclusion was that the insured could not regularly drive the non-owned car, defined as more than 45 days in the year before

the accident. This exclusion makes sense: it is one thing to cover an insured while driving a borrowed car, but an insurer needs to know what cars its insured regularly drives in order to charge a proper rate, or even decide whether to take the risk of insuring the driver. *See Crum and Forster v. Travelers Corp.*, 428 Pa.Super. 557, 560, 631 A.2d 671, 673 (1993) (upholding a non-owned vehicle exclusion to prevent a household from obtaining liability coverage on multiple vehicles by insuring only one of them).

Thus, State Farm's insurance policy in question is clear, and it fully comports with Pennsylvania law. Its limited non-owned vehicle exclusion presents no violation of any public policy. To remove this material basis for assessing risk, as Yelincic asks us to do, would only drive up insurance costs for everyone in this Commonwealth. This would violate public policy. *Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 62, 535 A.2d 1145, 1151, *alloc. denied,* 520 Pa. 590, 551 A.2d 216 (1988). We therefore agree with the trial court's decision that Yelincic cannot collect on the Brnardics' personal car insurance policy in this case.

Affirmed.

WIEAND, JOHNSON and SAYLOR, JJ., concur in the result.