### The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT

v.

### James J. CURRAN, Jr., et. al.

### No. Civ.A. 96–4473.

United States District Court, E.D. Pennsylvania.

Feb. 10, 1998.

---

Louis E. Bricklin, Bennett, Bricklin & Saltzburg, Philadelphia, PA, for Plaintiff.

Kevin F. Berry, Ledgewood Law Firm, Philadelphia, PA, for Defendants.

### DECISION

JOYNER, District Judge.

Plaintiff, The Automobile Insurance Company of Hartford, Connecticut ("AICHC") instituted this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that it is not obligated to defend or indemnify Defendant James J. Curran, Jr. for an accident involving a 1979 Mercedes 6.9 sedan. Defendant Curran, in turn, counter-claimed

for declaratory relief in the form of an order decreeing that AICHC is so obligated. Following Judge Gawthrop's denial of the parties' cross-motions for summary judgment, this matter was heard non-jury before the undersigned on March 11, 1997 and based upon the evidence presented, we now make the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff AICHC is a Connecticut corporation with its principal place of business located in Hartford, Connecticut. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 1).

2. Defendant James J. Curran, Jr. is an adult individual residing at 1402 Oak Road, Pottsville, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 2; Curran Deposition Excerpts, Exhibit "H").

3. Defendants Frank C. Williams, Jr. and Margaret A. Williams are adult individuals residing at Route 2, Box 97, Morgantown, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 3).

4. Defendant Mercedes–Benz of North America, Inc. and Daimler–Benz North America Corporation are both Delaware corporations with their principal places of business located in states other than Connecticut and with places of business respectively located at 1633 Broadway, New York, New York and 1501 Lebanon Church Road, Pittsburgh, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 4).

5. Defendant, Carson–Pettit, Inc. is a Pennsylvania Corporation with its principal place of business at 214 West Lancaster Avenue, Devon, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 5).

6. Defendant Reading Anthracite Company is a Pennsylvania corporation with its principal place of business located at 200 Mahantongo Street, Pottsville, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 6).

7. Defendant Theresa Ogrodnick is an adult individual residing at 15 Back Road, Shenandoah, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 7).

8. Defendant Tom Masano, Inc. is a Pennsylvania corporation with its principal place of business at 420 Gregg Road, Reading, Pennsylvania. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 8).

9. Defendant James J. Curran, Jr. ("Curran") is a licensed Pennsylvania attorney and was Vice–President of Reading Anthracite Company from February 1, 1961 until January 1, 1985. From January 1, 1985 until February 23, 1989, Curran was the Chief Executive Officer of Reading Anthracite. Since February 23, 1989, Curran has been the President of the Lehigh Coal and Navigation Company in Tamaqua, Pennsylvania. (Curran Deposition Excerpts, Exhibits "A," "B," "H," and "J").

10. Reading Anthracite Company had a practice of purchasing company cars to be used by its officers, directors, accounting and sales personnel. (Curran Dep. Excrpt., Exhibit "E"). In 1979, Reading Anthracite Company purchased a 1979 Mercedes 6.9 litre sedan for Curran's use. (Curran Dep. Excrpt., Exhibits "C" through "G").

11. In 1989, when Reading Anthracite was deaccessing some of its cars, Curran purchased the Mercedes 6.9 from the company for his daughter, Caitlin and the car was thereafter titled in Caitlin Curran's name at her father's address at 1402 Oak Road, Pottsville, PA. (N.T. 9–15, 17–18; Exhibit P–1).

12. Although the Mercedes 6.9 was titled in her name, Caitlin Curran, who had been residing in Philadelphia since 1988, did not make any of the loan payments on nor did she take possession of the car. Instead, at her father's request, she left the vehicle at her grandparents' residence at 1401 Oak Road in Pottsville, PA so that the car could be used to chauffeur her grandfather on his daily or weekly outings. (N.T. 8, 16–22).

13. Defendant Curran's parents, James J. Curran, Sr. and Frances Curran resided across the street from his home on Oak Road in Pottsville and the Mercedes 6.9 was

parked there from at least 1989 until May 11, 1992. (N.T. 38–41, 52–55, 61, Curran Dep. Excrpt., Exhibits "I," "V" "W").

14. From at least 1989 until May 11, 1992, although the Mercedes 6.9 was primarily used by the nurses and gardener/handyman working for Frances and James Curran, Sr. to chauffeur the elder Currans, the vehicle was available to anyone in the Curran family for use including Defendant James Curran, Jr. A key to the Mercedes was kept on a keyboard in the elder Currans' home. (N.T. 15–20, 36–48, 52–59; Curran Dep. Excrpt., Exhibits "J," "N," "P," "S," "T," "U," "W").

15. After taking title to the Mercedes 6.9, Caitlin Curran never drove the car, did not have a set of keys to the vehicle, did not pay for its insurance and did not pay for any maintenance, oil or gasoline. (N.T. 12–13, 15–16, 18–20).

16. James Curran, Jr. made the loan payments on and paid for the maintenance, gas, oil and insurance on the Mercedes 6.9 from 1989 until May 11, 1992. Defendant Curran also kept a key to the vehicle in a brass box in his home. (N.T. 9–10, 12–14, 19–20, 40; Curran Dep. Excrpt., Exhibits "O," "Q," "R," "U," "V").

17. Defendant Curran drove the Mercedes 6.9 on only a few occasions between 1989 and May, 1992, primarily to determine whether it was in proper operating condition. On none of those occasions did he ask his daughter Caitlin for permission to drive the car. (N.T. 19–24; Curran Dep. Excrpt., Exhibits "P," "V").

18. In May, 1992, Defendant Curran owned approximately twenty (20) motor vehicles, several of which were titled in the names of one or more of his four children, as well as in the names of he and his wife, Carolyn. Nearly all of the vehicles were kept in and around the Pottsville area either at Curran's, his wife's or his parents' residences, on the streets in and around those residences, at his dairy farm in North Manheim Township or at Lehigh Coal and Navigation in Tamaqua. (Curran Dep. Excrpt., Exhibit "J").

19. Defendant Curran insured the Mercedes 6.9 under Policy No. 79–VZ–EK–3853–M issued by The Hartford Insurance Company through the Hughes Insurance Agency under the name of himself and his wife, Carolyn at an address of 200 Mahantongo Street, Pottsville, PA. The Mercedes 6.9 was one of five motor vehicles insured under that policy. (N.T. 23–25; Exhibit P–3; Curran Dep. Excrpt., Exhibits "J," "O," "Q," "R").

20. As of May, 1992, Defendant Curran himself primarily and regularly drove a 1986 Mercedes 560 sedan (N.T. 42; Curran Dep. Excrpt., Exhibit "J").

21. On May 11, 1992, Defendant Theresa Ogrodnick, Mr. Curran, Sr.'s nurse, was driving him in the 1979 Mercedes 6.9 when the throttle malfunctioned and she lost control of the vehicle at the intersection of State Routes 924 and 329 in East Union Township, Schuylkill County. The car struck and severely injured Defendant Frank C. Williams, Jr. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 10; N.T. 52).

22. Subsequent to this accident, Defendant Frank and Margaret Williams brought lawsuits in the Schuylkill County Court of Common Pleas against all of the other defendants in this action. In the lawsuit against Defendant Curran, Mr. and Mrs. Williams seek compensatory and punitive damages Curran's alleged negligence in allowing Ms. Ogrodnick to operate the vehicle. (Plaintiff's Complaint and Defendants' Answers thereto, at ¶ 11–12).

23. Defendant Curran has demanded that plaintiff provide him with a defense and coverage in that lawsuit at Docket No. S–565–94 under two policies numbered 204SX20216293PCH and 204SX34157593PCH, which identified Curran as the named insured and provided coverage for a 1986 Jeep, a 1982 Dodge and a 1976 Chevrolet and a 1980 Cadillac, respectively. Both policies were in full force and effect on May 11, 1992. (Plaintiff's Complaint and Defendant's Answer thereto, at ¶s 13–16).

24. Both Policy No. 204SX20216293PCH and Policy No. 204SX34157593PCH provide in pertinent part in Part A (Liability Coverage):

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

"**Covered person**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

(Plaintiff's Complaint and Defendant's Answer thereto, at ¶ 17; Exhibit P–4).

25. Both Policy No. 204SX20216293PCH and Policy No. 204SX34157593PCH contain some twelve exclusions from liability coverage. Exclusion 9 provides;

We do not provide Liability Coverage:

9. For the ownership, maintenance, · or use of any vehicle, other than **your covered auto,** which is owned by you or furnished or available for your regular use.

(Plaintiff's Complaint and Defendant's Answer thereto, at ¶ 19; Exhibit P–4).

26. The 1979 Mercedes 6.9 which was involved in the May 11, 1992 accident was not shown in the declarations of either AICHC policy, nor did Defendant Curran ever request AICHC to insure that vehicle pursuant to the terms of either policy. (Plaintiff's Complaint and Defendant's Answer thereto, at ¶ 21).

### DISCUSSION

■ Plaintiff brought this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that it is not obligated to either defend or indemnify Defendant Curran in the Schuylkill County lawsuit brought against him by Frank and Margaret Williams or provide any coverage at all for the May 11, 1992 accident. That Statute states, in relevant part:

(a) In a case of actual controversy within its jurisdiction, ...... as determined by the administering authority, any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

A federal court thus has the discretion to entertain a declaratory judgment action when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Icarom, PLC v. Howard County, MD.*, 904 F.Supp. 454, 458 (D.Md.1995), quoting *Continental Casualty Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir.1994); *Bortz v. DeGolyer*, 904 F.Supp. 680, 684 (S.D.Ohio 1995).

■ While federal law will be applied and will control whether or not the court can render a declaratory judgment, state law is to be applied to the underlying substantive issues. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1093 (E.D.Pa. 1994), *aff'd*, 37 F.3d 1485 (3rd Cir.1994). Under the Declaratory Judgment Act, declaratory relief is appropriate where there is a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Id.*, citing *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) and *Lousiana Nevada Transit Co. v. Marathon Oil Co.*, 770 F.Supp. 325, 328 (W.D.La.1991).

In Pennsylvania, it is not uncommon to use declaratory judgment actions to resolve issues of an insurance company's duty to defend and indemnify. *Harleysville Mutual Ins. Co. v. Madison*, 415 Pa.Super. 361, 609 A.2d 564, 566 (1992); *Uguccioni v. USF & G*, 408 Pa.Super. 511, 597 A.2d 149 (1991). Moreover, the standards to be applied in reviewing insurance contracts under Pennsylvania law are well settled. *Frain v. Keystone Insurance Co.*, 433 Pa.Super. 462, 640 A.2d 1352, 1354 (1994). The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the

insured. *Dibble v. Security of America Life Insurance Co.,* 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991).

In determining the reasonable expectations of the insured, the courts must examine the totality of the insurance transaction involved. *Scott v. Southwestern Mutual Fire Ass'n,* 436 Pa.Super. 242, 647 A.2d 587 (1994). That this examination should encompass review of the language of the policy itself is self-evident. *See: Bateman v. Motorists Mutual Insurance Co.,* 527 Pa. 241, 246, 590 A.2d 281, 283 (1991). Where the provision of the policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. An insurance policy's language that is clear and unambiguous should be given its plain and ordinary meaning, unless the parties indicate that another meaning was intended. *Id.; Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983); *Pennsylvania Manufacturers' Ass'n Insurance Co.,* 426 Pa. 453, 456, 233 A.2d 548, 551 (1967); *Scott,* 647 A.2d at 590–591.

Determining whether the terms of a contract are ambiguous is a question of law. *St. Paul Fire and Marine Insurance Co. v. Lewis,* 935 F.2d 1428, 1431 (3rd Cir.1991) A provision of an insurance policy is ambiguous if reasonably intelligent people on considering it in the context of the entire policy would honestly differ as to its meaning. *Britamco,* 845 F.Supp. at 1093, citing *inter alia, K & Lee Corp. v. Scottsdale Insurance Co.,* 769 F.Supp. 870, 873 (E.D.Pa.1991). In making this determination, courts must consider the actual words of the agreement itself as well as any alternative meanings offered by counsel, and extrinsic evidence offered in support of those alternative meanings. In making the ambiguity determination, however, the language of the policy is not to be tortured to create ambiguities where none exist. *St. Paul,* at 1431, quoting *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3rd Cir.1985) and *Mellon Bank N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3rd Cir.1980).

In this case, the parties agree that the outcome of this action depends upon the application of Exclusion No. 9 to the facts presented at trial. It is therefore incumbent upon this court to determine first, whether the language of that exclusion is ambiguous or not such that it should be given its plain and ordinary meaning. Again, that Exclusion states as follows:

We do not provide Liability Coverage:

9. For the ownership, maintenance, or use of any vehicle, other than **your covered auto,** which is owned by you or furnished or available for your regular use. (emphasis in original)

Recently, our colleague Judge Pollak, was presented with a case strikingly similar to this one in which he also was asked to enter a declaratory judgment that a "regular use" exclusion was applicable to relieve Nationwide Insurance Company of its duty to defend and indemnify the estate of a deceased driver in a Pennsylvania state wrongful death action. *See: Nationwide Mutual Insurance Co. v. Shoemaker,* 965 F.Supp. 700, 703 (E.D.Pa.1997). In that case, the deceased driver, who had been living with her parents and was an insured under their automobile policy with Nationwide, was involved in a fatal automobile accident while driving her grandmother's car. The Nationwide policy explicitly excluded coverage for those motor vehicles owned by a non-household member if such a vehicle was "furnished to you or a relative for regular use." Following a thorough canvass of Pennsylvania caselaw, Judge Pollak noted:

Courts have generally found the term "regular use" unambiguous. Indeed, it appears that every Pennsylvania state court to have considered the question has come to that conclusion. See: *Crum and Forster v. Travelers Corp.,* 428 Pa.Super. 557, 631 A.2d 671, 673 (1993) ("The exclusionary language is not ambiguous"); *State Farm Mut. Auto. Ins. Co. v. Brnardic,* 441 Pa.Super. 566, 657 A.2d 1311, 1313 (1995), *alloc. denied,* 543 Pa. 695, 670 A.2d 142 (1995) ("insurance policy in question is clear"); *Kieffer v. Nationwide Mut. Ins. Co.,* 7 Pa.D. & C.3d 293 (1978) ("Plaintiff argues that the provisions of the subject policy are ambiguous. We do not agree"). Courts in other jurisdictions have reached

similar results. *See,* e.g.: *Grange Ins. Ass'n v. MacKenzie,* 37 Wash.App. 703, 683 P.2d 221 (1984), *aff'd,* 103 Wash.2d 708, 694 P.2d 1087 (1985); *Woodman v. Hartford Accident & Indemnity Co.,* 27 Mass. App.Ct. 1120, 537 N.E.2d 601 (1989). In fact, defendant ... points to no case in which a court has found the term "regular use" ambiguous.

965 F.Supp. at 703.

■ As was Judge Pollak's experience, our investigation of Pennsylvania insurance law has yielded no cases in which a regular use exception was found ambiguous. Accordingly, we also find the language of Exclusion 9 in this matter to be unambiguous and shall therefore read it in the context of its plain and ordinary meaning.

As explained by Judge Gawthrop at page 5 of his Memorandum and Order of January 7, 1997, Exclusion 9 will apply if, at the time of the subject accident, James Curran, Jr. was the owner of the Mercedes or it was furnished or available for his regular use. We thus now to these issues.

■ Under the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. § 102, "owner" is defined as "[a] person, other than a lienholder, having the property right in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security." However, in Pennsylvania, a certificate of title is merely evidence of ownership of a motor vehicle—it is not conclusive in and of itself. *Wasilko v. Home Mutual Casualty Co.,* 210 Pa.Super. 322, 232 A.2d 60, 61 (1967). Instead, the courts of Pennsylvania look to see who it is that in fact possesses the attributes commonly associated with ownership. *Aetna Casualty & Surety Co. v. Duncan,* 972 F.2d 523, 526 (3rd Cir.1992). The relevant issue as to whether the insured was vested with the "elements of ownership—the use, benefit, possession, control, responsibility for, and disposition of the automobile." *Id.,* citing *Wasilko,* 232 A.2d at 62.

■ In common usage, "furnished" means "to provide or supply;" "available" means "suitable or ready for use" and "readily ob-tainable, accessible;" and "regular" means "usual, normal or customary." *Federal Kemper Insurance Co. v. Ward,* 679 F.Supp. 489, 492 (E.D.Pa.1988), *aff'd,* 860 F.2d 1074 (3rd Cir.1988). Pursuant to these definitions, it has been recognized that the test of a regular use exclusion is not use but availability for use or ownership by a member of a group who would be likely to make their cars available for each other's use. *Id.,* at 493, citing *Kieffer v. Nationwide Mutual Insurance Co.,* 7 Pa.D. & C.3d 293, 298 (1978) and *Johnson v. Braunsberg,* 51 D. & C.2d 659 (1970).

In this case, since 1989 the Mercedes 6.9 was titled in the name of Caitlin Curran and there is no evidence that the vehicle was ever titled in the name of James Curran, Jr. The vehicle was, however, insured in the names of James J. Curran, Jr. and Carolyn Curran and, by his own testimony, it was James Curran, Jr. who paid for the loan payments, gasoline, oil, maintenance and repairs to the vehicle and it was under Mr. Curran's direction that the maintenance on the vehicle was performed. (N.T. 9–10, 12–14, 19–25, 40; Curran Dep. Excrpt., Exhibits "J," "O," "P," "Q," "R," "U," "V"; Exhibit P–3). The address at which the vehicle was titled was Defendant Curran's and it was also at the behest of Defendant Curran that the car was kept at his parents' home and was utilized to chauffeur his parents, particularly his father, on a regular basis. (N.T. 8, 9–22, 38–41, 52–55, 61, Curran Dep. Excrpt., Exhibits "I," "V" "W"; Exhibit P–1). Defendant Curran also kept a set of keys to the vehicle in his home and, following the accident, Curran directed that certain parts be removed and that the car be kept secure. (N.T. 9–10, 12–14, 19–20, 40; Curran Dep. Excrpt., Exhibits "O," "Q," "R," "U," "V" "X").

The record further reflects that while Curran seldom drove the 6.9, he testified that "it was available at the house for whomever needed it." To operate the car, Curran had only to walk up the street and take it out. (Curran Dep. Excrpt., Exhibits "P," "V"). It was not necessary for Curran (or for any other family member) to obtain Caitlin Curran's permission to drive the car. (N.T. 19–24; Curran Dep. Excrpt., Exhibits "P," "V").

As the foregoing evidence demonstrates, Caitlin Curran had none of the attributes of ownership to the Mercedes, with the exception of the title, while her father, James Curran, Jr. had virtually all of those attributes. Indeed, Mr. Curran had easy access to and could freely use the vehicle whenever he so chose and it is clear that he, more than anyone else, had responsibility for the car's maintenance, repairs and insurance and had control over who used the car and when. Likewise, it appears that it was Defendant Curran who had the ability to control whether, how, when and where the vehicle could have been disposed following the accident. We thus conclude that he was the de facto owner of the vehicle.

Moreover, while it is obvious that Mr. Curran seldom operated the Mercedes and that he certainly did not "regularly use" it, it is equally clear that he could have done so had he so chosen. The 6.9 was thus a "vehicle ... furnished or available for [Curran's] regular use" within the meaning of Exclusion 9. AICHC therefore has no obligation or duty to defend or indemnify James Curran, Jr. in the pending state court actions which arose out of the May 11, 1992 accident.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties to this action pursuant to 28 U.S.C. §§ 1332 and 2201.

2. The "regular use" exclusions set forth at Exclusion No. 9 in both AICHC Policy Nos. 204SX20216293PCH and 204SX34157593PCH are clear and unambiguous.

3. Defendant James J. Curran, Jr. is the *de facto* owner of the 1979 Mercedes 6.9 sedan which was involved in the accident at the intersection of State Routes 924 and 329 in East Union Township, Schuylkill County, Pennsylvania on May 11, 1992.

4. At or about the time of the May 11, 1992 accident, the 1979 Mercedes 6.9 sedan was a vehicle which was available for James J. Curran, Jr.'s regular use.

5. Plaintiff has no duty to defend or indemnify James J. Curran, Jr. under Policy Nos. 204SX20216293PCH and 204SX34157593PCH with respect to the lawsuit instituted against him by Frank C. and Margaret Williams at No. S–565–94 in the Court of Common Pleas of Schuylkill County, Pennsylvania or with respect to any cross-claims or potential cross-claims arising therefrom and/or brought by any of the co-defendants in that lawsuit or any other lawsuits arising out of the May 11, 1992 accident.

An order follows.

### ORDER

AND NOW, this 9th day of February, 1998, it is hereby ORDERED and DE-CREED that Judgment is Entered in Favor of Plaintiff and against Defendant James J. Curran, Jr. and it is hereby DECLARED that no coverage or duty to defend and/or indemnify exists under Policy Nos. 204SX20216293PCH and 204SX34157593PCH issued by The Automobile Insurance Company of Hartford, Connecticut to James J. Curran, Jr. for the claims raised against Defendant Curran in the lawsuit now pending in the Court of Common Pleas of Schuylkill County, Pennsylvania at No. S–565–94 or for any cross-claims or potential cross-claims arising therefrom and/or brought by any of the co-defendants in that lawsuit or any other lawsuits arising out of the May 11, 1992 accident.

IT IS FURTHER ORDERED that the Counter-claim for Declaratory Judgment brought by Defendant James J. Curran, Jr. against Plaintiff is DISMISSED with Prejudice for the reasons set forth in the preceding Decision.