PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff,

v.

Edward and Margaret HINSON Defendants.

No. CIV.02–7967.

United States District Court, E.D. Pennsylvania.

June 12, 2003.

Dawn A. Segal, Law Offices of John I. Gordon, Philadelphia, PA, for Prudential Property & Cas. Ins. Co.

Joseph P. Green, Jr., Duffy Green & Redmond, West Chester, PA, for Edward Hinson, Margaret Hinson.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

Prudential Insurance Company ("Prudential," "Plaintiff"), a corporation organized under the laws of the State of Indiana with its principal place of business in New Jersey, has brought a declaratory judgment action against Edward and Margaret Hinson ("Defendants"), citizens of the Commonwealth of Pennsylvania, seeking a determination that it is not bound to pay underinsured motorist benefits to compensate for injuries sustained by Edward Hinson in an automobile accident.[1] Defendants' counterclaimed, seeking judgment against Prudential for $200,000. Before the court are cross-motions for summary judgment. Plaintiff's motion will be granted and Defendants' motion will be denied because a policy exclusion applies to Hinson's use of a non-owned automobile.

### I. BACKGROUND

The material facts of this case are not disputed. Edward Hinson, a part-time police officer with the Oley Township Police Department, suffered serious injury when his marked police cruiser swerved off the road to avoid a vehicle driven by Lisa Colvin on September 3, 1997. Hinson had been in pursuit of a speeding driver a significant distance ahead of Colvin, but lost control of the cruiser as it spun across the roadway and rolled into an adjacent farm field. Hinson and his wife, Margaret, subsequently commenced an action against Colvin, who settled the case for the $300,000 limit of her liability policy. The Hinsons also filed a claim based upon their underinsured motorist ("UIM") coverage under a personal policy issued by Prudential (the "Policy"). The Policy provides up to $200,000 of coverage for Hinson's injuries and damages.

The Policy states that it will provide UIM coverage when an insured "is struck by an underinsured **motor vehicle**," and it further provides, "[y]ou and a **resident relative** are insured while using a **non-owned car**." Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. A, Policy, at Part 5, pages 7–8. The Policy also contains two exclusions relevant to the present case. The first exclusion applies to regularly used non-owned motor vehicles (the "regular use exclusion"):

> We will not pay for a **Bodily Injury** or **Property Damage** loss to anyone under Parts 1, 2, 3, 4, or 5 if **you** or a **household resident** is using a **non-owned motor vehicle** not insured under this part, furnished or available for the regular use of **you** or a **household resident**.

*Id.* at 8 & attached pages following declarations.[2] The parties do not dispute that the Oley Township police vehicle qualifies as a "non-owned motor vehicle." *See id.* at attached pages following declarations. The second exclusion addresses motor vehicles used in connection with a business or job (the "business exclusion"):

> **We** will not pay for **bodily injury** to anyone (other than **you** or a **resident relative**) using a **non-owned motor vehicle** in any business or job.

---

1. Complete diversity exists in this case, and the amount in controversy exceeds $75,000. We have jurisdiction pursuant to 28 U.S.C. § 1332(a). The action for declaratory judgment is properly brought pursuant to 28 U.S.C. §§ 2201–02.

2. The language of the regular use exclusion was broadened as set forth in several pages following the declarations page of the Policy, Exhibit A. The change includes property damage as a recoverable loss, but does not alter the exclusion in a way material to the present litigation.

*Id.* at 9. Both exclusions are listed under the heading, "LOSSES WE WILL NOT PAY FOR (PART 5)."

Hinson held a job as a registered nurse and paramedic at a hospital, and would work for the Oley Township Police Department as his full-time hospital schedule allowed. Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. D., Dep. of Edward Hinson, 6. Prior to the accident, Hinson had worked for the police department for approximately six years, from 1991 to 1997. *Id.* at 4. When asked whether he had worked continuously over that period of time, Hinson said, "I was regularly scheduled, yes." *Id.* at 5. The amount of time that he worked for the department varied, but he averaged twenty to forty hours a month. *Id.* When Hinson reported for his shift, he would drive either one of two vehicles owned by the police department, one marked and the other unmarked. At all times while working for the department, he patrolled in one of the cars, never on foot or on a bicycle. *Id.* at 10–13. On occasion, Hinson would be assigned specifically to one of the two cars, and if given the opportunity, he would take the marked car. *Id.* at 11–12.

On October 8, 2002, Prudential filed a declaratory judgment action requesting this court to enter a judgment finding that Defendants are not entitled to UIM coverage with regard to Edward Hinson's motor vehicle accident on September 9, 1997. Defendants counterclaimed, seeking judgment against Prudential for $200,000 in compensatory damages, the stacked limit of the Policy. Both parties have filed motions for summary judgment.

## II. DISCUSSION

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

With this summary judgment standard in mind, the court first considers whether the provision regarding "regular use" in the Policy is ambiguous. We then examine whether the uncontested facts of this case establish that Edward Hinson's use of the two police vehicles for approximately six years, for twenty to forty hours a month, fell under the Policy's regular use exclusion. Finally, the court considers whether the reasonable expectations doctrine requires an extension of underinsured motorist benefits to Hinson, contrary to the written terms of the policy.

### A. Absence of Ambiguity in the Policy

The Pennsylvania Supreme Court has consistently held that the interpretation of an insurance contract is a matter of law for the courts to decide, and that when the policy language is clear and unambiguous, a court should give effect to the language of the contract." *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994); *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991); *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300,

469 A.2d 563, 566 (1983).[3] On the other hand, a given provision is ambiguous "if reasonably susceptible of more than one interpretation." *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981); *see also Federal Kemper Ins. Co. v. Ward*, 679 F.Supp. 489, 494 (E.D.Pa.1988), *aff'd*, 860 F.2d 1074 (3d Cir.1988) (finding provision ambiguous "only if reasonably intelligent persons would honestly differ as to its meaning, when considering it in the context of the entire policy"). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co.*, 469 A.2d at 566. Nevertheless, as a general rule of construction, a court should read a policy to avoid ambiguities, if possible. *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir.2002).

Defendants maintain that the Policy "as a whole" is ambiguous because although it excludes coverage for regularly-used, non-owned motor vehicles, it expressly provides coverage for a policyholder while using a non-owned vehicle in any business or job. Defs.' Mem. in Opp. to Pl.'s Mot. & in Supp. of Cross–Mot., at 15–16. Prudential responds that Defendants are attempting to create ambiguity where none exists, but unfortunately provides little support for its argument other than incorporating by reference nonspecific discussions in its earlier memorandum. Pl.'s Mem. in Opp. to Defs.' Cross–Mot., at 6.[4] As a preliminary matter, the court notes that Defendants do not argue that the regular use exclusion is, by itself, ambiguous. Defendants no doubt avoid this contention because courts have generally found the term "regular use" unambiguous. *See Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700, 703 (E.D.Pa. 1997). Pennsylvania courts adhere to this view and regularly reach the same conclusion. *Id.; see, e.g., Crum and Forster v. Travelers Corp.*, 428 Pa.Super. 557, 631 A.2d 671, 673 (1993) ("The exclusionary language is not ambiguous and must be given its ordinary meaning.") (internal citations omitted). Instead, Defendants' argument amounts to a contention that the regular use exclusion conflicts with the business exclusion, and to the extent of that conflict, that the business exclusion controls. This construction of the terms of the policy is unreasonable.

As the court has noted, the business exclusion provides that, "[Prudential] will not pay for **bodily injury** to anyone (other than **you** or a **resident relative**) using a **non-owned motor vehicle** in any business or job." Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. A, Policy, at Part 5, page 9. This exclusion, read by itself, is arguably ambiguous. By negative implication, its language could suggest that an insured has the benefit of UIM coverage when driving a non-owned motor vehicle in connection with a business or job. On the other hand, the business exclusion appears in the subsection of Part 5 of the Policy that concerns the exceptions to UIM coverage, not an area where one naturally would expect Prudential to expand its obligations. In fact, Prudential's obligations to the policy holders are set forth in an earlier subsection. But because ambiguities within a policy are construed against the drafting insurance company, UIM coverage could conceivably exist based upon

---

**3.** Neither party disputes the applicability of Pennsylvania law to this case.

**4.** In addition, counsel for Prudential unfortunately has failed to number the pages of its memorandum. All references to page numbers in that document are based on the court's own numbering, with page one representing the page with the case caption and document title.

the language of the exclusion. *See Standard Venetian Blind Co.*, 469 A.2d at 566.

No ambiguity exists in this case however, because the business exclusion is clear when read in conjunction with the regular use exclusion listed in the same subsection of the Policy. A court should read a policy to avoid ambiguities whenever possible. *Bayer*, 284 F.3d at 496. The regular use exclusion specifically states that Prudential will not provide UIM coverage to an insured individual "using a non-owned motor vehicle not insured under this part, furnished or available for the regular use of you or a household resident." Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. A, Policy, at Part 5, page 8 & attached pages following declarations. The plain language of that exclusion clearly announces that Prudential will deny coverage for a car not owned by the insured, but which the insured drives consistent with the concept of "regular use." Consequently, coverage for an insured while operating a non-owned vehicle in connection with a business or job, as arguably implied by the business exclusion, is only available *so long as the use of that vehicle is not regular*. This interpretation renders the provisions of the Policy consistent, unlike the interpretation proposed by Defendants that would require us to find that the business exclusion overrides the regular use exclusion. Given two competing interpretations, we find that the one creating consistency is the better one, and that "reasonably intelligent persons" would not honestly differ as to this interpretation of the policy. *See Bayer*, 284 F.3d at 496; *Federal Kemper Ins. Co. v. Ward*, 679 F.Supp. 489, 494 (E.D.Pa.1988), *aff'd*, 860 F.2d 1074 (3d Cir. 1988).

Our conclusion is reinforced by the fact that the policy includes UIM coverage for rented cars, for up to thirty consecutive days. Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. A, Policy, at Part 5, page 3. A rented car used by an insured individual or resident relative on a business trip would be covered for up to thirty days, and would not be subject to the business exclusion for that limited period of time. But after that period, Prudential has contracted to deny coverage. Such a denial for prolonged use of a vehicle that does not belong to the owner is entirely consistent with the regular use exclusion of the policy. Accordingly, we find that no ambiguity exists with respect to the regular use exclusion of the Policy.

**B.** Whether the "Regular Use" Exclusion Applies in this Case

■ Because jurisdiction over this case is based upon diversity of citizenship among the parties and state substantive law governs, a federal court must look for guidance to the highest court of the state whose law is applied. *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F.Supp. 700, 704 (E.D.Pa.1997). The Pennsylvania Supreme Court has not provided specific guidance regarding what level of activity amounts to "regular use," although it has considered other aspects of regular use exclusions. *Burstein v. Prudential Property and Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204, 210 (2002) (holding that the regularly-used, non-owned car exclusion and its contractual restraint on UIM portability does not violate public policy). In the absence of an authoritative pronouncement, the federal court's task is to predict how the Pennsylvania Supreme Court would rule, and in making this prediction, we may look to lower state court decisions, the policies underlying the applicable legal doctrines, doctrinal trends indicated by these policies, and decisions of other courts. *Shoemaker*, 965 F.Supp. at 704, citing *McMillan v. State Mut. Life Assur. Co. of America*, 922 F.2d 1073, 1077 (3d Cir.1990).

The Pennsylvania Superior Court has considered the issue of what constitutes regular use in *Crum and Forster Personal Insurance Co. v. Travelers Corp.*, 428 Pa.Super. 557, 631 A.2d 671 (1993). In that case, the court affirmed the entry of summary judgment against Eugene McDonald, the driver of a car struck by Phillip Ellis, because a policy exclusion applied to any vehicle, other than a covered automobile, "furnished or available for the regular use of any family member." *Id.* at 672 (emphasis omitted). At the time of the accident Ellis was driving his grandmother's car, and McDonald attempted to recover from Crum and Forster Personal Insurance Company, an insurer who had issued UIM coverage to Ellis's mother. Ellis admitted that in the four years preceding the accident, he had driven his grandmother's car approximately five times a week. Before reaching its decision, the court described "regular use" as "a principal use, as distinguished from a casual or incidental use." *Id.* at 673 (quoting 6C Appleman, Insurance Law and Practice § 4455 at 558). It also noted that courts struggle with the application of regular use exclusions due to the fact-intensive nature of such inquiries. Whether a vehicle is covered by a policy with such an exclusion is often a jury question; however, the court added, "[w]here the facts are not in dispute ... and reasonable minds cannot differ regarding the result, the issue of coverage can be decided as a matter of law by the court." *Id.* at 673.

Defendants rely on *Nationwide Mutual Insurance Co. v. Shoemaker* in arguing that Hinson's activity did not amount to regular use. 965 F.Supp. 700 (E.D.Pa. 1997) (Pollak, J.). In *Shoemaker*, the court found that a granddaughter's use of her grandmother's car on a daily basis over three weeks constituted regular use. 965 F.Supp. at 708. Judge Pollak reviewed several decisions concerning regular use exclusions and recognized two factors as "significant clues" to the presence of regular use: blanket permission to use a car and an available set of keys. *Id.* at 706. Defendants apparently would have us believe that these factors are "universally important indicia" for every regular use case, but that view may only be true for situations concerning family members or acquaintances. In the employment context, the analysis is slightly different, where one may not need permission to use an automobile, but one nevertheless is required to use a vehicle in the performance of a job. But even under the factors of *Shoemaker*, Defendants have a difficult time making their case. According to the uncontested facts, Hinson would work for the Oley Township Police Department as his schedule at the hospital allowed. Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. D., Dep. of Edward Hinson, 6. And on the other hand, there is no evidence in this case that Hinson's hours were limited to the twenty to forty hours a month that he worked. He therefore had a broad degree of access to the two vehicles that was not blanket permission, but that was certainly more than restricted, occasional use.

A more recent case from this district, *Automobile Insurance Co. of Hartford v. Curran*, has further clarified the meaning of "regular use." 994 F.Supp. 324, 330 (E.D.Pa.1998) (Joyner, J.). In that case, following a bench trial, Judge Joyner found that a regular use exclusion justified denying coverage for a non-owned car. The exclusion contained language describing any car furnished or available for an insured's use. *Id.* As the opinion explained,

> In common usage, "furnished" means "to provide or supply;" "available" means "suitable or ready for use" and "readily obtainable, accessible;" and "regular" means "usual, normal or customary." Pursuant to these definitions, it has been recognized that the test of a

regular use exclusion is not use but availability for use. . . .

*Id.* (internal citations omitted), citing *Federal Kemper Ins. Co. v. Ward,* 679 F.Supp. 489, 494 (E.D.Pa.1988), *aff'd,* 860 F.2d 1074 (3d Cir.1988); *see also Kieffer v. Nationwide Mut. Ins. Co.,* 7 Pa.D. & C.3d 293, 298 (1978); *Johnson v. Braunsberg,* 51 Pa.D. & C.2d 659, 663 (1970).

Looking beyond cases that consider Pennsylvania law, we have found one case from a lower court in New York State that informs our present decision. In *Ruggiero v. Globe Indemnity Co.,* the court held that a part-time taxicab driver who drove a cab three times a week for three to four hours per day for fourteen years had met the definition of regular use of a non-owned automobile. 66 Misc.2d 948, 323 N.Y.S.2d 292 (1971). The policy at issue specifically denied coverage for injuries sustained while occupying an automobile furnished for regular use, other than the automobile owned by the insured or a temporary substitute. *Id.* at 294. The court noted that the exclusion applied even though the cabdriver would not use the same taxi each time, but would draw from a pool of available vehicles. *Id.* at 295. In addition, the court stated, "to subject the defendant insurer to liability under this policy for injuries sustained by the plaintiff while driving a taxicab, with all the additional risks inherent in such a pursuit and for which no premium was paid, would be unconscionable." *Id.*

While we hesitate to apply the label "unconscionable" to the situation considered in *Ruggiero,* that case involved facts very similar to this one, and in our opinion the New York court reached a sound decision. In the case now before us, Edward Hinson used either one of the two Oley Township police vehicles for twenty to forty hours a month, in the performance of his duties, over the course of approximately six years.[5] Such a level of use is roughly consistent with the facts of *Crum and Forster Personal Insurance Co. v. Travelers Corp.,* 428 Pa.Super. 557, 631 A.2d 671 (1993), in which a car was driven approximately five times a week over four years. The facts of *Ruggiero,* concerning a cab driven three times a week, three to four hours a day, for fourteen years, also afford a good comparison. 323 N.Y.S.2d at 293. Both of those cases, as well as *Curran,* 994 F.Supp. at 330, addressed exclusions applied to vehicles "furnished" for regular use, similar to the language of the regular use exclusion here. We also find that Hinson's use of the two vehicles satisfies the test for regular use set forth in *Curran,* specifically that the Oley Township Police Department had provided him with two vehicles to drive, suitable and ready for use in the performance of his job duties, which were readily obtainable by him whenever his full-time schedule permitted. *See* 994 F.Supp. at 330. Hinson's use of the two vehicles was regular to the extent that it was "usual, normal or customary" for him to drive them. *Id.* His own statements support this view. When asked whether he had worked continuously over the six-year period that Oley Township employed him, Hinson responded, "I was regularly scheduled, yes." Pl.'s Mem. of Law in Supp. of Summ. J. Mot., Ex. D., Dep. of Edward Hinson, 5. Based on the foregoing discussion, Hinson's circumstances clearly fall within the regular use exclusion of the Policy.

---

**5.** Contrary to Defendants' arguments, the applicability of the regular use exclusion is not lessened because Hinson had two vehicles at his disposal. *See Ruggiero,* 323 N.Y.S.2d at 295, citing *Kenney v. Employers' Liability Assur. Corp.,* 5 Ohio St.2d 131, 214 N.E.2d 219, 221 (Oh.1966) (holding that automobile exclusion may apply not just to a single unit, but also to a pool of vehicles furnished for regular use).

Defendants also argue that the scope of the regular use exclusion should be limited to its purpose. *See Shoemaker*, 965 F.Supp. at 707–08. The court agrees, and believes Defendants to be correct in arguing that, "[t]he exclusion is intended, all agree, to ensure that an owner doesn't seek coverage on multiple vehicles while paying a premium on only one." Defs.' Mem. in Opp. to Pl.'s Mot. & in Supp. of Cross–Mot., 13. That rationale applies to the present case where Hinson's personal coverage is limited to exclude a police cruiser that he regularly operated twenty to forty hours per month over the course of six years. Consequently, on the undisputed facts of this case, we find that "reasonable minds cannot differ" regarding the conclusion that Hinson's use of the two police vehicles was regular and subject to the regular use exclusion of the Policy. *Crum and Forster Pers. Ins. Co.*, 631 A.2d at 673.

### C. Doctrine of Reasonable Expectations

■ Finally, we address Defendants' argument that their reasonable expectations regarding the existence of coverage require this court to look past the plain language of the Policy and enter judgment in their favor. According to Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 106 (3d Cir.1999)(internal quotes omitted), citing *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1353 (1978) and *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 925–26 (1987). In most cases, the parties' reasonable expectations are best evidenced by the language of the insurance policy. *Bensalem Tp. v. Int'l Surplus Lines Co.*, 38 F.3d 1303, 1309 (3d Cir.1994); *Watkins*, 198 F.3d at 106. Even so, a court must examine the totality of the insurance transaction at issue to ascertain the reasonable expectations of an insured individual. 198 F.3d at 106. The clearest of exclusions will not bind an insured where an insurer or its agent has created a reasonable expectation of coverage, and coverage may exist based upon any other reasonable expectations of an insured. *Id.*

The Pennsylvania Supreme court has indicated that the doctrine often applies where an insurer provides coverage different from what an insured initially requests. *Tonkovic*, 521 A.2d at 925–26; *cf. Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 567 (1983) (upholding exclusion for damages not normally covered by insurance policy based upon plain language of the policy). The court in *Tonkovic* noted "a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage ... and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." 521 A.2d at 925. Recent decisions from lower Pennsylvania courts have followed this trend of according reasonable weight to the specific terms of policies. *See Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1140 (Pa.Super.2003) (distinguishing cases where policy is unambiguous and therefore doctrine of reasonable expectations does not apply); *Kvaerner Metals Div. v. Comm. Union Ins. Co.*, 825 A.2d 641, 644 (Pa.Super.Ct.2003) ("While a determination as to the reasonable expectations of the insured must be based upon the totality of the insurance transaction involved, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.").

The present case is more similar to *Standard Venetian Blind Co.* rather than

*Tonkovic,* because here, Defendants received precisely the type of coverage they requested. That coverage was subject to the regular use exclusion, one of the "clauses that are the usual incident of the coverage applied for." *Tonkovic,* 521 A.2d at 925. Defendants base their argument upon Margaret Hinson's testimony that a Prudential agent asked about her husband's employment and she informed the agent that he worked primarily as a paramedic and also as a part-time police officer. Defs.' Mem. in Opp. to Pl.'s Mot. & in Supp. of Cross–Mot., Ex. 6, Dep. of Margaret Hinson, 19. Assuming for this discussion only that Prudential did contract to provide underinsured motorist coverage that extended to Hinson's occasional use of a police vehicle, it is not reasonable to conclude that Prudential created an expectation that regular use would be covered. Regular use of a non-owned automobile was expressly and plainly excluded from the Policy's UIM coverage. The court also finds it highly unlikely that Prudential would have willingly written the Policy for Defendants to include the frequent use of a police vehicle used to pursue traffic law violators at high speeds. Nor would a reasonable individual expect a UIM policy on a personal automobile to extend to frequent use of such a police vehicle. We therefore decline to extend coverage based upon Pennsylvania's reasonable expectations doctrine, contrary to the clear terms of the Policy.

### III. CONCLUSION

Based on the undisputed facts of this case, we have determined that the regular use exclusion of the Policy is not ambiguous, that Defendant Edward Hinson's use of the police vehicle amounted to regular use, and that Pennsylvania's reasonable expectations doctrine does not alter the plain language of the Policy. The motion by Plaintiff Prudential seeking summary judgment and a declaration that it need not provide coverage for matters arising from the accident at issue will be granted. The motion by Defendants Edward and Margaret Hinson for summary judgment will therefore be denied. An appropriate order follows.

### ORDER

AND NOW, this 12th day of June, 2003, **JUDGMENT IS ENTERED** in favor of Plaintiff Prudential Property and Casualty Insurance Company and against Defendants Edward and Margaret Hinson on both Plaintiff's action for a declaratory judgment and Defendants' counterclaim.

### ORDER

AND NOW this 12th day of June, 2003, upon consideration of Plaintiff Prudential Property and Casualty Insurance Company's ("Prudential's") Memorandum of Law in Support of Summary Judgment Motion, filed April 24, 2003, Defendants Edward and Margaret Hinson's ("Defendants"') Memorandum in Opposition to Insurer's Motion for Summary Judgment and in Support of Insured's Cross–Motion for Summary Judgment, filed May 29, 2003, and Plaintiff's response thereto, filed June 2, 2003, consistent with the foregoing memorandum, it is hereby **ORDERED** as follows:

1. Plaintiff Prudential's motion for summary judgment is **GRANTED** and judgment shall be entered in favor of Plaintiff Prudential and against Defendants Edward and Margaret Hinson on Prudential's action seeking a declaratory judgment.

2. Defendants Edward and Margaret Hinson's cross-motion for summary judgment is **DENIED** and judgment shall be entered against Defendants and in favor of Prudential with respect to Defendants' cross-claim.

3. It is the declaration of this court that Plaintiff Prudential is found to owe no underinsured motorist coverage to Defendants Edward and Margaret Hinson with regard to the claim they are asserting due to a September 3, 1997 motor vehicle accident.

4. This case is closed.